Dr. Rosen, Morning of Sickles v. The Department of Veterans Affairs. Mr. Sebekos? Sebekos. Excuse me? Sebekos. Sebekos. Thank you very much. Okay. Good morning. My name is Peter Sebekos. I represent the appellant. The issue before the court is quite simple. Can the Board of Veterans' Appeals delegate away its obligation under 71-04-D1 to provide reasons or basis as to the adequacy of a VA medical exam? In this case, the Board, in a prior remand, ordered the VA to either obtain a medical opinion or conduct a medical exam and left to the discretion of the medical professional whether he would actually conduct an exam or order diagnostic tests or simply do a file review. Appellant is not arguing that the BVA can reach its own conclusion on whether a physical exam or a diagnostic test is necessary and substituted for the medical professional's conclusion. What appellant is arguing is whether the Board still has a responsibility to review the medical exams and address certain basic factors, such as if the Board, in the remand, says that this review or exam should be conducted by a medical specialist, was that done? Chester, in your case, sir, if I'm not mistaken, I find it, bottom page 13 of your brief, you feel that the Board is required to address any legal question, any question that's raised by the record, regardless of whether the claimant has raised the point, then you know the result case and where you fit in that thing. So your view is that when a record comes up to the Board, even though the veteran is not complaining about this aspect of what happened, if one could read the whole record and say one might have raised that question, you believe it's incumbent on the Board to raise the question itself and then respond to the question in 7104D2, right? Yes. That's one of the arguments that would make it. In the situation, I was just thinking, what happens if a veteran has service connection for an arm injury and a leg injury, and he goes back down into the R.O., and they have an exam on both aspects of both issues, and he's seeking enhanced rating for both. He wants to go up to 40% or something on both. And so his desire to have a higher rating on the arm is denied. It's also denied on the leg. But he appeals up to the BBA only on the arm, only on the arm. The record shows both the arm and the leg exam. Let me finish. Sure. Okay, because you probably saw that coming, right? And so he appeals up on the arm thing, and the Board has to do a 7104, give an answer on the arm. But the Board didn't do anything about the leg because the veteran hadn't complained about the denial of enhanced rating for the leg, right? On your theory of the case, the Board's obligated to look at the leg problem presented by the record. And let's say that he had asked to go from a zero rating to a 10% or greater rating on the leg, and the record was perfectly clear that he was at least entitled to 20%, if not 30%, on the leg. Judge Klovenster, I believe the distinction would be that in the scenario you're describing, the veteran has only appealed as to, I believe you said, the arm. Okay, if a claim is denied and the veteran does not appeal that denial, it's not before the Board. So in that situation, it's not a— Let's assume it was the arm case, and the problem with the arm case was that the doctor who examined the arm was a foot doctor. So it was an incompetent doctor. It was like Rizzo, an incompetent doctor. And the veteran goes up, and he did not say to the BVA, I had an incompetent doctor, and that was the problem. And so the Board looked at the record and said, well, the doctor did this. I assumed he was qualified, and it goes on and on and on. Later on, the veteran wants to argue that there was a flaw there. The Board should have noticed that the guy wasn't qualified, right? Rizzo says, no, no, no, it was your bird. Right, that characterization is correct. That's what we're arguing. Why should it be any different where your complaint is the adequacy of the exam as opposed to the adequacy of the person conducting the exam? I don't think it should be. That's what your case is here. Correct, correct. So Rizzo seems to me to say, if the veteran, contrary to your theory, that the veteran isn't required to raise an issue in order to invoke 7104B, Rizzo says, oh, yes, it is. And as I look at the situation, your ultimate question, which is, was your client properly assessed, is a fact question. You know, did he get the right, should he have had a different type of an exam, just as a matter of medicine? And that's the kind of question that we're never going to be able to review. I recognize that. And the object is to cabin that issue within the department. So you make certain that all those issues get dealt with by the CAVC in the end on the back side. Right. But when you cabin that within the Department of Veterans Affairs, you have a final stop where you can, where the BVA has a responsibility to address all the material findings of fact and conclusions of law. Well, with respect to the issues presented to them, they are obligated to write down exactly why they did. The reason for that is, how does the CAVC know what to do with an issue that was clearly presented to the BVA, but the BVA didn't do anything? There were a lot of cases that straightened them all up. So 7104D works great where an issue had been presented. Right. In fact, this court has said that 7104D1 serves in a similar function as cross-examination in an adversarial proceeding. I believe you said that in Jennings. Now, in this case, the Court of Appeals for Veterans Claims is saying to us, well, if the BVA gives discretion to the doctor, in this case in Cincinnati, to determine whether he needs to examine the veteran or order a diagnostic test, when it comes back to the BVA, that determination by the medical professional shouldn't be reviewed. No, they're saying that the presumption, because of this discretion being given, the presumption is that the examiner exercised the discretion in an appropriate way. Right. And then if someone has reason to believe it was not, the RISO says it's the veteran that has to say, ooh, it was not exercised correctly. The RISO case you're citing, is that an opinion of this court? Yeah. Okay. To kind of follow up on what Judge Clevenger says, the record says, if the medical specialist deems it necessary, give him an examination. And they come back and say, essentially, well, it's not necessary. He admits there's 50 years where he didn't have any troubles with his knees. It's just age-related osteoarthritis. And it goes through, we do this a whole second time. Well, if it's necessary, take a look, and they come back and say, on this record, it's not necessary. Now, how do we, given the context that you've discussed with Judge Clevenger, how do we possibly escape this? Because, Judge, what appellant is arguing is not that the board should substitute its own opinion as to whether those tests or exam is necessary. What appellant is arguing is the board has the same responsibility that it has in other situations similar to this. That when those medical reports come back and the record comes back, the board has got to look at that record, and the board has got to ask certain questions. Why doesn't the board have full justification to say, well, obviously it wasn't necessary, claim denied? What is wrong with that? The questions that I think the board has to answer are, is it clear from the medical opinion that this doctor recognized that it was his call? You've got exam inquiries that go from either a regional office or the Appeals Management Center, which is kind of a super regional office within the VA. They take the board decision, and they translate it into an exam inquiry. That exam inquiry goes to a VA hospital. So, what you're suggesting is that in this sort of a situation, the board should have sent a runner back to the hospital to say, now, which doctor looked at this, and which doctor decided that there was no need for, who signs this? Is that what you're saying? No, no, no, absolutely not. What the board should do is look at the documents before it. What did the exam inquiry say? What is there in the medical opinion that indicates that the doctor knew that this was something he should decide? Okay, what I see, and I don't want to get back to the facts. Let's get back to Judge Clevenger's problem, as you're starting to apply the law to the facts of the case. Well, no, look at it in a vacuum. Look at it. The point you're making, I mean, your CAVC judge understood it, and he said the argument you're making, you didn't make it below. You didn't make the argument to the BVA that there might have been some doubt in the examiner's mind about whether he could give an examination given the no-exam, no-exam, no-exam language. Well, I have to read the Rizzo case over that you referred to, but, you know, the laws, I understand it. I know it's hell-curt. There are a whole mess of cases in the statute. The statute itself states that if it's a material issue that the board is rendering a fact-finding on or a conclusion of law on, they need to provide an explanation, the reasons or basis. It says on all issues presented by the record. Right, reasonably raised by the record. So I don't believe that Mr. Sickles- I mean, there'll be a lot of issues. It seems to me that the thrust of your position is that you want the BVA, when it receives an appeal, to take the entire record that's come up to it on the appeal and scour the record to see whether or not the supplemental statement of the case was accurate. No. No, I'm not suggesting that. In this particular case, when your clients, when Mr. Sickles came up from the RIO and got a statement of the case, did he get a supplemental statement of the case? I don't believe so. Okay, did the statement of the case raise any question about whether he should have had an exam or an MRI or whether there was some problem about whether or not this examiner thought he had the authority because of the no-exam, no-exam liners? I don't think that that was discussed in the statement of the case either. I think what I'm asking- But it's supposed to be. I mean, it's a user-friendly thing. The person that helps at the RIO helps back up the statement of the case is supposed to look at the whole record and say what are the issues here that would be beneficial to the veteran if they were presented to the BVA and the BVA then had to do a 7104D. Right. Your Honor, what I'm arguing is not that they have to scour the entire record, but they sent it back on remand for a medical opinion, okay? So there may be 6 or 7 pages that they need to review. They sent it back for a medical opinion based on either an observation or if you feel necessary an actual examination. Right. So here are the documents. Here is what the regional office said to the doctors. Here is the doctor's response. I look at those 6 or 7 pages. Now, is it clear from those 6 pages that this physician really knew that he should make that call? At the beginning of the exam inquiry, it says no exam required, no exam required, no exam required. Wait a second. It says, let's be accurate about exactly what it says, right? Sure. No exam at this time. At this time. No exam at this time. Okay, moving on. That's the first one, okay? Okay. The second one you've got, I'm going to ask Mr. Goodman about that. The second one you've got a little bigger language. It says no exam, no exam, review opinion only. Okay. And when we look at what the first doctor. You turn it over and then it says on the next page, if the medical specialist deems it necessary, the veteran should undergo a VA exam and or diagnostic testing. And what the doctor replies is on the last page of his report. This is the June 2005 report. And I'm going to get back to the law in a second because, you know, this is factual. Now, I'm not asking you to review this, but what the doctor says in that first report is this is a file review. Therefore, there is no medical history. There is no exam findings. Now, for the doctor to reply, this is a file review only, and those things are not going to be in my report. So as a result of that particular report, he got to go back and read another exam, correct? They sent it to a second doctor who misunderstood that the first doctor had not conducted an exam, which the board carried on. So these are the things that I think the board is obligated to focus on. Thank you, Mr. Sebekus. Next, let's hear from the government. Mr. Goodman. Thank you, Your Honors. May it please the Court. The primary contention Mr. Sickles makes is that the board has somehow abdicated its responsibilities here. If we turn to the board's decision on adjournment appendix page 31, the board said, There are of record two competent and probative sources of medical nexus information. He goes on to say, Each medical examiner made a thorough review of the veteran's claims folder, and both examiners offered well-supported conclusions and indicated specific consideration of the veteran's contentions concerning his condition. The board then went on to say, The VA medical opinions appear to be congruent with the medical evidence of record, which, although indicating an in-service injury, show no identifiable residuals thereof. So it's clear from this record that the board didn't abdicate its responsibility, but in fact did exactly what Mr. Sickles is suggesting, and the board looked at all of the record and determined for itself whether there was a medical nexus here. Is there any determination that the doctors were justified in not concluding that an examination was required? The doctors looked at the record and found Because the doctors made no specific determination one way or the other as to whether an MRI or any other physical examination was necessary. No, they didn't, Your Honor. They didn't say whether an MRI was necessary or an fMRI or a CAT scan or any of the various battery of tests that could be conducted. What the doctors did was review the record and said, In their opinion, it was less likely than not that there was a nexus here, that the arthritis is based on the file, and they didn't indicate that there's any additional tests that could have been done that they thought would have shown a nexus. Mr. Goodman, why in this particular case do the instructions to the guys that are going to be doing the examination say, in one case, no exam at this time, no exam at this time? It says four times, no exam at this time. What's the purpose of that? I think as a matter of course, Your Honor, when the board remands, they either remand for an opinion or for an examination or for both. And this is simply to clarify to the individual they're sending it to whether an exam is specifically being required or whether an exam is at the discretion of the physician. So what they do in this emphatic language is they say, for example, on Appendix 12, this is the first kickback, four times they say no exam. Does that just hit the button and it keeps repeating? I mean, you would think one time would be enough. I would think so, Your Honor, and I'm not sure why it's four times in this case. But where an exam is required, this language doesn't appear and it just says exam or go to the exam. So is it your contention that in the agency where the BVA has not ordered an exam, this no exam, no exam language always shows up just to warn them they don't need to start an exam right away? I don't know that it always shows up this emphatically. My understanding is that when the board remands, they indicate whether an examination is required or not. Well, what about on Appendix 17? The thing was remanded to have the doctor or medical examiner review the entire case and decide whether a physical exam was necessary, correct? Yes, Your Honor. That was the remand instruction. So on H17, you see it says here no exam, no exam, no exam, review opinion only. Yes, Your Honor. Now, the argument which wasn't made to the BVA but is being made now is that that language must have confused whoever the name of the doctor here was, the physician, because although it says on the next page the specialist, if he deems it necessary, could conduct an exam. So if you've been told review opinion only, there is an inference that maybe that second boilerplate language has been overcome. Any physician doing a review has a duty. So, I mean, what his basic case is, the board should have spotted that. When the case came up to the board, the board should have, because the board had remanded to a discretionary officer to say, review the record or give a whole exam. Your opinion, your judgment makes the difference which one you do. So this document can be read as having taken the judgment away from the examiner. You're not allowed. You only do an opinion. So his point is, as I understand it, is that because this issue lies in the record, the BVA had an obligation to recognize that, and the BVA had an obligation to ascertain whether this particular examiner did or did not have unfettered discretion. And then they would have to write that up on a piece of paper, 7104 would go to, that would all be encapsulated. I understood your argument in the brief based on Rizzo to say that's not true. Your position seems to be that that issue has to be raised by the veteran. The board doesn't have an independent scouring duty. Our position, Your Honor, is that if the veteran independently raises it, then the board has a duty to address it. If he raised it. If he raised it. Not to say that the board doesn't have some duty to look to the record. The board does have a duty to review the record for sufficiency. And if the record fairly raises an issue, then the board should address it. Here, there's no evidence, there's nothing to indicate that it fairly raised these issues. And that's a factual finding by the board and the veterans court that this court can't review. Well, they didn't make a factual finding with regard to the question of whether the examiner thought his discretion was impaired. And, in fact, I'm making the opposite point here. Mr. Sickles is suggesting that... That's an important point. You're not leaning on Rizzo strongly to say, excuse me, the only issues that the board has to address under 7104D are the issues that are presented by the veteran? The only issues... I'd say not that strongly, Your Honor. The board has to address the issues raised by the veteran and doesn't have to address issues... I know the board has to answer questions that are raised by the veteran. Your Honor, we would say that if it's fairly presented in the claims file, and that's a factual determination, then the board should address the issue. Well, who decides if it's fairly presented? The board and the veteran on appeal. And so that doesn't the board... The board can simply say and get away with it, well, this issue wasn't fairly presented? And that brings up the Davies and Green cases that Mr. Sickles cites. In Davies and Green, the board said there wasn't an issue there of whether additional diagnostic testing was necessary. But the Veterans Court looked to the record and said, in fact, there was an autopsy needed in Davies. And in Green, more information about whether polio was related to the leg injury. And so the Veterans Court remanded to the board to more fully evaluate whether additional diagnostic tools were necessary in those cases. It's very fact-specific in each individual case whether the board... Whether there's sufficient information in the record to raise the issue such that the board has to address it in 7104. And here... Okay, well, then put that in RISO. Weren't the qualifications of the officer fairly raised on the record? In RISO? I don't recall if there was a finding specifically... Yes, Your Honor. I don't recall specifically if there was a finding that it was fairly or not fairly raised in the record. There was evidence in the record in RISO to that effect. Sure. So there's evidence in the record in RISO to the fact that the doctor didn't have the right qualifications, right? Yes, Your Honor. But you're trying to tell me that it was not fairly presented. Because you're telling me if an issue is fairly presented, even though it's not raised by the veteran, then the BVA has the 7104D duties to address the issue and write it up. Now, in RISO, we held no. RISO made an express argument. He said, I don't have to raise this. And we struck him down. We said, no, no, no. Mr. RISO, when you're complaining about something like that, your obligation is to raise it. And then it becomes an issue that's in the record for 7104. There are certain things, Your Honor, that the veteran explicitly has to raise, like the qualifications of the physician. Here he's saying that the record raises enough evidence that an MRI should have been conducted. Really what he wants is an MRI to have been conducted, and there was no MRI conducted here. And he says the board should have said, why not? The problem with that is there's not enough here to raise the issue to the board's consciousness, where the board would have to address that. Again, the board didn't address why a hep MRI or a CAT scan wasn't done either. But nothing in the record presented that to the board, such that the board would have a duty to address it. So here— Come back to this particular record, Mr. Goodman. Yes, Your Honor. Let's assume, for purposes of argument, that the second exam, where they said no exam, no exam, no exam, review opinion only. Okay? Okay, let's assume that the language in here where it said the medical specialist, if he deems it necessary, he can undergo an exam, the boilerplate over on the next page. Assume that wasn't in the orders. Assume that all that had been in the orders was this thing that said no exam, no exam, review opinion only. Then the physician still has— No, opinion had come up to the board, and the veteran had failed to complain about it. Now, the board's remand instructions were, you know, you decide whether he needs to have an exam. Correct? The veteran—the remand orders— Except when they all might have a medical. Not exactly. That'd be an instance in which the veteran hasn't raised the issue, but it was fairly presented by the record. Correct? I don't think so. Because the physician always has a duty to say specifically whether additional testing is necessary. I want you to either exam, or I want you either to do a visual or to do an actual exam, and use your discretion to tell me which one you did. But the orders to the doctor were, in any event, do not give an exam. And if the physician believed that an exam was necessary to make a diagnosis, then the physician would have a duty to say in his opinion, I can't make this assessment without further diagnosis, as the physicians did in Davies and Green. In both those cases, the physician said, I can't reach a determination here. In this case, both doctors didn't do that. They didn't say, we need an MRI, or otherwise we can't tell. If the physicians here had said, we need an MRI, otherwise we can't tell, then the board would have a duty. It would be fairly raised in the record. The board would have a duty to explain why an MRI is not necessary. I don't see that. I'm looking for a bootstrap. Where the fellow below was told, no exam, no exam, no exam. Simply review the record and give us an opinion. This is a military. People can do what they're ordered to do. So they review the record, and they say one thing. And they don't say, well, I really should have been able to give him an MRI. Well, an opinion can be either that this is service-connected, that it's not service-connected, or that on this record, I can't tell. And that's often the case that a physician will say, on this record, I can't tell. I need more testing. I need to do an exam. Here, the physician was specifically told, if you needed to do an exam, do an exam. But even if there were a letter on top saying, don't do an exam under any circumstances, still the physician's opinion, if he believed that an exam was necessary, would have said, I can't give an opinion without that exam. And that's what the physician did, said in Davies and Green. And in both cases, the Veterans Court remanded, saying the record barely presents that question of whether additional diagnostic testing is necessary. Here, there's nothing like that. There's no indication that an MRI would even help to establish whether there's a nexus. And we're deep into the facts, Your Honor. And our primary argument on appeal is that this Court doesn't have jurisdiction to address these factual questions. And it's not clear what Mr. Sickles is saying, the rule of law. That's flimsy. I mean, you know that. I mean, the question here is 7104D. 7104D says you're required to write up an answer to all issues presented. The question is, the legal question is, does an issue have to be presented by a vet in order to get on to the 7104 conveyor belt? And you argue flat out in your brief at page 16, in the absence of a challenge by the veteran, the Veterans Court need not have addressed the qualifications, citing Rizzo. Yes, Your Honor. That's not saying sometimes they have an obligation to address and sometimes they don't, which is what you're saying at oral argument. If he's challenging the doctor's qualifications, which it appeared from his brief that's what he was challenging, then yes, Rizzo creates an absolute bar. If he didn't raise it below, that's it. If he's saying that what the doctors did was great and there's no problem and so we get away from this issue of the no exam, no exam. We accept that the doctors did a good job, but independently the board had some duty to order another exam because there's some reason to believe that there's an MRI. Then the government's answer to that is that there's nothing in this record to raise that issue before the board. That it can be the case that something's fairly raised in the record and the board has a duty to address it, even if it wasn't specifically raised by the veteran. But if he's challenging the veteran's qualifications, which it appears in his blue brief that he was. If someone's qualifications, if someone gives you an exam, a psychiatric exam, and they're a foot doctor, then the exam of necessity is no good. If the qualifications are totally missing, the exam's no good. So I don't understand why you're not arguing that if one is basically trying to argue that they gave you the wrong exam, it's the same question. Your Honor, if this court thinks that it's the same question and that under any circumstance the veteran needs to raise it, the government certainly does not oppose that determination. We were trying to suggest that in light of... How do you decide what kinds of issues are fairly presented? You're there at the BVA and you're looking over the record and you know what the statement of the case or the supplemental statement of the case, that user-friendly. You know exactly what it is that the system wants the BVA to review, right? But under your theory, the BVA has an obligation to scour the entire record to look for issues that are fairly presented but not actually presented. We're not suggesting that... That's your position, is it not? I hope that I didn't leave that impression. Why didn't you give me that impression? The Board has a duty to address certain things, those things that are presented in the statement of the case, as Your Honor suggests, and by the veterans. The statement of the case is, of course, part of the record. We're not trying to suggest that the Board has this duty to independently scour the entire record. Of course, it doesn't. But the Board... I don't know why you're not. I mean, in this case, the question is... The ultimate question is whether or not the person who was told to do a visual or do a physical, you decide what's necessary to put this veteran's concerns at rest, got an instruction that was inconsistent. The instruction said, don't do an exam, and then one said you could do an exam. And so all the veteran is trying to say is, I'd like to know for sure whether that particular examiner, who's my last in line, whether he understood that he had the discretion to do the exam, and if he did, I lose. That's all he wants to know. And he says that issue is fairly presented by the record, which it is. Well... Isn't it? No, Your Honor. Isn't... Do you contend that the... I'll be quick. Don't you contend that the document that's A7-17-18 is ambiguous? No, Your Honor. I don't believe it's ambiguous. The remand instruction said not to do an exam, but to review the claims file, and if, upon review of the claims file, an exam is necessary, to then do an exam. What's the word only mean? That's before the review of the record. So the 2007 was... After the 2005, the record wasn't complete when the 2005 medical opinion was written. So the board asked for another one and said, review all these records, see if this changes anything. If the records don't... If the records change anything or if you think an exam is necessary, do an exam. But it's... Your Honor's correct. It starts off by saying no exam, review opinion only. It says only. Review opinion only. Only means... Only in the means doesn't mean do an exam. And I would think... I mean, I don't... How can you argue that that's not ambiguous as to whether he thought he could still do an exam? Because on the next page, it indicates that an exam can be conducted. Therein lies the ambiguity. There are two conflicting instructions. The remand was to decide whether there's a nexus between the knee injury and the arthritis today. It wasn't to determine whether an exam was necessary. It's to determine whether there's a nexus. And both doctors said, we don't see any evidence of a nexus here. And they didn't indicate that an MRI would help them make that determination. So they said... They didn't explicitly say, but they didn't indicate that an exam was necessary to reach that nexus determination. They never even say that. They don't say that in their write-up, do they? No, Your Honor. They don't say at all. They're saying you're presuming that they reached that conclusion. Because we're presuming competence on the part of the doctors. Yes, Your Honor. And if the doctors believe that additional testing were necessary, then it's their duty to say that in their opinion. And that's the issue that Rizzo squarely addresses. And if the veteran doesn't bring that issue of the doctor's competence to the board's attention, then the board doesn't have a duty to address it. I'm willing to... Thank you, Mr. Goodman. Thank you, Your Honor. Mr. Sebekis, you've used your time. We'll give you a minute of rebuttal. First, Rizzo appears to only address whether the veteran has to challenge the qualifications of the doctor. It's not a broad pronouncement that the veteran has to raise a point at the BVA. It seems to me that the rule of law that if the record reasonably raises a material issue, the board needs to address it, that that rule of law is still in effect. If you're obligated to challenge the qualifications, why shouldn't you be obligated to challenge the extent of the BVA? I'm not even going to try to answer that in detail. I'll just refer you to this court's case law. It's a non-adversarial system. Until recently, at the regional office level, the veteran did not have the right to retain an attorney. It's basically due to the nature of the system. The BVA has been... You would think that if the law is that if you were sent down there for a psychiatric examination and a foot nurse came in and examined your brain and said you were perfectly normal and you failed to raise that to the board, you're dead. It's over. You would think if that's the case, then for sure you would burden the veteran with the obligation to complain if he thought the nature of the extent of the exam he got was bad. Okay, let me... And please extrapolate this to any other situation. In this case, we have a veteran. His initial in-service injury was diagnosed in the military as lesions medial meniscus. He comes forward after many years. He says to the VA, look, I worked as a draftsman all my life. I didn't have that many instances where my knee gave way. I'm 70 years old. It's getting worse. They give him a conventional x-ray. I'm 60. Mine's getting worse. Sorry? I'm 60. Mine's getting worse. Okay. I'm 54, and mine's gone.  Now... I think your time's expired, Mr. Sebekas, but thank you very much. Thank you.